MINNEAPOLIS-MOLINE COMPANY, a Minnesota corporation, v. CAPITOL PLUMBING, INC., a Delaware corporation, NATHAN L. COHEN and HARVEY C. FENIMORE, Sheriff.

CAPITOL PLUMBING, INC., a Delaware corporation, v. JAMES R. JOSEPH, t/a Joseph's Dairy Supply Co.

GIRTON MANUFACTURING COMPANY, INC., a Pennsylvania corporation, v. JAMES R. JOSEPH, t/a Joseph's Dairy and Construction Co.

(*January* 28, 1960.)

STIFTEL, J., sitting.

*Samuel R. Russell* (of Morford, Young and Conaway) for Minneapolis-Moline Company.

*Courtney H. Cummings, Jr.* (of Killoran and VanBrunt) for Capitol Plumbing, Inc., and Nathan L. Cohen.

*Joseph H. Geoghegan* (of Berl, Potter and Anderson) for Girton Manufacturing Company, Inc.

Superior Court for New Castle County, Nos. 1098, 362 and 898, Civil Actions, 1958.

STIFTEL, J.:

This motion raises the rights of attaching creditors to certain farm machinery as against the rights of Minneapolis-Moline Company ("Minneapolis"), the manufacturer and supplier of the farm machinery in question, which machinery has been levied upon by the creditors of James R. Joseph, t/a Joseph's Dairy Supply Co. ("Joseph"), pursuant to valid judgments obtained against him.

Although three separate actions are involved, they have been combined for the purpose of this motion.

Minneapolis entered into a contract with Joseph on August 15, 1957, whereby Joseph was made a dealer for new farm machinery, accessories, attachments and repair parts delivered by Minneapolis to Joseph for resale. The attaching creditors claim that the contract is a conditional sales contract which would be effective as against creditors if recorded within the time permitted by Title 6, *Delaware Code Ann.*, § 905. The creditors contend, however, that since Minneapolis did not record the contract in accordance with the law of this State, that the contract is therefore void as against them and that consequently their attachments over Minneapolis prevail.

On the other hand, Minneapolis contends that the contract is not a conditional sales contract but is instead a consignment contract or contract of bailment with the power to sell and, therefore, not within the provisions of the Delaware Conditional Sales Act. Minneapolis argues that even if the contract is interpreted as a conditional sales contract, the creditors should not prevail because they did not extend credit to Joseph in reliance upon Joseph's possession of the attached farm machinery.

The contract was dated August 5, 1957, and became effective on October 6, 1957. A supplemental contract changing the terms of paragraph 21, pertaining to "warranty", was executed on November 1, 1957.[1] The contract was between Minneapolis and its dealer, Joseph's Dairy Supply Co., specifying all the particulars as to the manner in which the dealer and Minneapolis should carry on their relationship. The contract did not specify any particular farm machinery that was to be covered by the contract, nor was there a list appended

---

[1]The October 6, 1957 contract and the November 1, 1957 supplemental contract will be hereinafter referred to as the contract.

or attached to the contract covering any specific items of property or the amount of money due and owing on such particular items of farm machinery. The creditors claim that the express language of the contract clearly indicates that it is a conditional sale. They base their conclusion on the terms of the contract and how the language of the contract fits into the following definition of a conditional sale as it is set out in 6 *Del. Code Ann.* Sec. 901:

" 'Conditional sale' means (1) any contract for the sale of goods under which possession is delivered to the buyer and the property in the goods is to vest in the buyer at a subsequent time upon the payment of part or all of the price, or upon the performance of any other condition or the happening of any contingency; or (2) any contract for the bailment or leasing of goods by which the bailee or lessee contracts to pay as compensation a sum substantially equivalent to the value of the goods, and by which it is agreed that the bailee or lessee is bound to become, or has the option of becoming the owner of such goods upon full compliance with the terms of the contract;".

The creditors then explain how the conditional sales contract is ineffective against them by citing 6 *Delaware Code Ann.* Sec. 905, which provides:

"Every provision in a conditional sale reserving property in the seller, shall be void as to any purchaser from *or creditor of the buyer*, who, without notice of such provision, purchases the goods *or acquires by attachment or levy a lien upon them*, before the contract or a copy thereof shall be filed as hereinafter provided, unless such contract or copy is so filed within ten days after the making of the conditional sale."

It is admitted by Minneapolis that the contract was not recorded. Therefore, if this court should determine that the contract is a conditional sales contract, the creditors who have levied on the goods of Joseph must prevail over Minne-

apolis; unless, of course, this court should further determine that the creditors were only entitled to levy on such property as was in the possession of Joseph at the time they extended the credit and upon which they relied for an extension of credit.

There are portions of the contract which support the argument of Minneapolis and other portions of the contract which support the creditors' argument that it is a conditional sale. However, the nature of the contract must be determined from looking at the entire contract and not just individual portions thereof in a separate and distinct sense. It is the cumulative picture arrived at from the four corners of the instrument that must control.

The contract purports to be one of sale and not one of consignment. The parties are described in the contract primarily as if Minneapolis is the vendor and Joseph is the purchaser. For instance, the contract itself is denominated "Dealer's Sales Contract for Farm Machinery" and its purpose is stated as follows:

"The purpose of this contract is to govern the relations between the Company and the Dealer in the sale by the Company to the Dealer of the products covered by the contract and the resale of those products by the Dealer to his customers."

By and large, when the entire contract is analyzed, it can only be concluded that the dealer Joseph is a buyer from Minneapolis, with title in some instances being retained by Minneapolis, as a security device to insure to Minneapolis the payment of unpaid equipment in the future. Joseph, the dealer, could pay in cash and in the event such payment was made for the equipment, the dealer would become the title owner. The contract throughout mentions the word "resale", which is strongly indicative of conditional sale and not of a bailment agency. In fact, by paragraph 24, the contract pro-

vided: "The Dealer is not the Company's agent in any respect or for any purpose and is not authorized to incur any obligations or make any agreements, promises, warranties, or representations in its behalf." This language, while not absolute, is another indication that an agency to sell or consignment was not intended, but instead it was intended that Joseph be the actual purchaser, with certain specific obligations in his relationship with Minneapolis when equipment was resold which was not paid for by Joseph. I do not intend to set forth the complete analysis of the contract. Its purpose and its type is clear.

However, even though the contract is a conditional sales contract within the statutory definition of the term as set forth in 6 *Del. Code Ann.* § 901, the question arises whether it is, in fact, a conditional sales contract within the meaning of the Conditional Sales Act. Although there is nothing in the definition set forth in 6 *Del. Code Ann.* § 901 to require any identification or description of personal property sold under a conditional sales contract, nevertheless it is a general rule that the contract of conditional sale must in some manner describe or identify the property. *MacCallum-Donahoe Finance Co. v. Warren*, 122 *Wash.* 176, 210 *P.* 368; Annotation: Conditional Sale—Description, 65 *A. L. R.* 715.

Section 910,[2] Title 6, *Delaware Code*, is evidence that the Legislature intended that a brief description or identification

---

[2]"The filing officer shall mark upon the contract or copy filed with him the day and hour of filing and shall file the contract or copy in his office for public inspection. He shall keep a separate book in which he shall enter the names of the seller and buyer, the date of the contract, the day and hour of filing, a brief description of goods, the price named in the contract and the date of cancellation thereof; except that in entering the contracts mentioned in section 908 of this title, the Secretary of State shall record either the sum remaining to be paid upon the contract or the price of the goods. Such book shall be indexed under the names of both seller and buyer. For filing and entering such contract or copy, the filing officer shall be entitled to a fee of $1 except that for filing and entering a contract described in said section the Secretary of State shall be entitled to a fee of $2."

of goods sold on conditional sale should be included as a part of the conditional sales contract. The contract, therefore, should at least be sufficiently adequate to enable the recording officer to follow the requirements of Section 910 that he enter a "brief description of goods" in a separate book which must be maintained by him for purposes of inspection by interested parties. *In re Smith, D. C. E. D. Pa.*, 19 *F. Supp.* 597; *Empire State Chair Co., Inc. v. Beldock*, 2 *Cir.*, 140 *F.* 2d 587, 588 (footnote 2).

The Minneapolis-Joseph contract did not mention or describe any items of equipment nor did it have attached or appended thereto any reference to any items of equipment. While the act does not require a definite method of description or identification of goods or equipment, it is generally assumed that there must be some reasonable attempt to identify or describe the items the contract is intended to cover. See *Huber v. Cloud*, 102 *N. J. L.* 181, 130 *A.* 562, 563; *C. I. T. Corp. v. Naudack*, 44 *Ariz.* 413, 38 *P.* 2d 310; and compare Commentaries of Professor Bogert, draftsman of the act, 2A *U. L. A.* 91, 92, and particularly Supp. 1958, 93-97, and cases cited. If some description or identification of goods or equipment was not required by the act, a conditional sales contract, once recorded, would be effective, not only as to all equipment in the hands of the dealer on the day the contract was recorded, but would be effective as to any future replacements of equipment. For example, the Minneapolis-Joseph contract, once recorded, would be effective against any and all equipment subsequently obtained by Joseph. Only one contract would have to be recorded by Minneapolis with each dealer for the term of its relationship with each dealer as set forth in the contract. This would be a most undesirable situation. It would be impossible for a creditor searching the records to determine what property was purchased by the dealer for cash and in which the dealer had title, and, consequently, it would be impossible to determine if there were liens on any particular property in the possession of the dealer. No creditor

could determine the financial condition of the dealer with this loose and inadequate type of arrangement.

In *International Harvester Co. v. Champlin Refining Co.*, 153 *Kan.* 414, 110 *P.* 2d 779, the Court had before it a contract similar to the contract before this court. In that case, even though the contract was recorded, the Court decided that a failure to describe the equipment caused the contract to be ineffective as a conditional sales contract. In arriving at this decision, the Court said (110 *P.* 2d at page 782):

"The court has come to the conclusion that by liberal construction all that can be said from a reading of the contracts involved in this case is that they notified the public that if R. O. Allen, the dealer, should during the ensuing year decide to purchase any of the various implements, tools and machines which were offered for sale by plaintiff, and if the dealer did not pay cash for the goods as he had a right to do under the contract—nay even was obligated to do as to certain trucks purchased under the truck contracts—then in that event plaintiff retained title to the goods until whatever should be due on the purchase price was paid. How were third parties to know what articles the dealer purchased for cash at some future date, what articles he made a down payment on and agreed to pay the balance in accord with the contracts, or what articles he bought entirely on credit? We find no indication in the contract from which any suggestion could be drawn by a third person as to the amount which could be assumed to be due on any of these articles which the dealer might order in the future."

I conclude that the Minneapolis-Joseph contract was not a conditional sales contract because it failed to identify or briefly describe the equipment sold to Joseph.

Section 905, Title 6, *Del. Code Ann.* prescribes that an unrecorded conditional sales contract shall be void as to a

creditor who, without notice of title reservation, acquires a lien on the goods by attachment.

Whether or not the attaching creditors prevail as to each item of equipment attached, where no conditional sales contract exists as to each item attached, 47 *Am. Jur. Sales,* §§ 829, 830, was not briefed by the parties. The parties may submit briefs on the effect of this decision on the case after first conferring with the court.

Case was settled by parties.

